# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

BELMONT MEDICAL CARE, LLC,

        Plaintiff,

-v-

COMMUNITY INSURANCE COMPANY
D/B/A ANTHEM BLUE CROSS BLUE
SHIELD OF OHIO, *et al.*,

        Defendants.

Case No.: 2:18-cv-968
JUDGE GEORGE C. SMITH
Magistrate Judge Jolson

## OPINION AND ORDER

This matter is before the Court on Defendants Community Insurance Company d/b/a Anthem Blue Cross Blue Shield of Ohio and Anthem, Inc.'s [1] (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration, or in the alternative to Stay Proceedings. (Doc. 3). This Motion is fully briefed and ripe for review. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** and the Motion to Stay is **DENIED AS MOOT**.

## I.  BACKGROUND

Plaintiff Belmont Medical Care, LLC ("Belmont") is an Ohio limited liability company providing medical services in Belmont County, Ohio. (Doc. 2, Compl. ¶ 1). Defendants provided health insurance to residents of Belmont County, Ohio. (*Id*. ¶¶ 2–3). Plaintiff brings claims for

---

[1] The Complaint states that "Anthem, Inc. is a fictitious name used formerly by Anthem Insurance Companies, Inc. which use was cancelled by operation of law by the Ohio Secretary of State on April 26, 2002 for failure to file renewal of fictitious name." (Doc. 2, Compl. ¶ 3).

fraud and breach of contract against Defendants for failure to reimburse Plaintiff for services rendered. (*Id*. ¶¶ 25–27).

Plaintiff's claims arise out of its relationship as a contracted provider to certain of Community's members pursuant to a Provider Agreement between Plaintiff and Community dated March 25, 2017 (the "Provider Agreement") (attached as Doc. 6-1, Exhibit 1 to Pl.'s Response). The Provider Agreement "entered into by and between Community Insurance Company doing business as Anthem Blue Cross and Blue Shield (hereinafter "Anthem") and Belmont Medical Care (hereinafter "Provider")" provides in relevant part, "[a]ll disputes between Anthem and Provider arising out of or related in any manner to this Agreement shall be resolved using the dispute resolution and arbitration procedures as set forth below . . .", "[a]ny dispute within the scope of subsection 7.1.1 that remains unresolved at the conclusion of the applicable process outlined in subsection 7.1.1 shall be resolved by binding arbitration in the manner as set forth below," and "[e]nforcement of this arbitration clause, including the waiver of class actions, shall be determined under the Federal Arbitration Act ("FAA"), including the FAA's preemptive effect on state law." (*Id*., *see also* Doc. 3-1, Klein Decl. ¶ 8).

Plaintiff concedes that its claims are subject to the Provider Agreement's arbitration provision by acknowledging in its Complaint that it invoked the dispute resolution procedures regarding a mandatory mediation—which is one of the necessary steps before arbitration under the Provider Agreement. (*Id*.; Doc. 2, Compl., ¶¶ 29, 30). In fact, pursuant to the Provider Agreement, Plaintiff made a demand for arbitration with the Judicial Arbitration and Mediation Services ("JAMS") on July 27, 2018. (Doc. 3-1, Klein Decl. ¶ 9). Plaintiff clarifies that it filed both this lawsuit and the demand for arbitration because Defendant Anthem is not a party to the Provider Agreement and thus not bound by the arbitration agreement.

## II.  STANDARD OF REVIEW

Defendants move to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on their argument that Plaintiff's claims are subject to an arbitration agreement.  In the alternative, Defendants seek to have this case stayed pending arbitration.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  If a party who signed an arbitration contract fails or refuses to arbitrate, the aggrieved party may petition the court for an order directing the parties to proceed in arbitration in accordance with the terms of the agreement.  9 U.S.C. § 4.  The Court must then "determine whether the parties agreed to arbitrate the dispute at issue." *Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No. 2:15-CV-2044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (Marbley, J.) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* at *1; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)*; see also Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration.").  However, "[w]hile ambiguities … should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in light most favorable to the non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.). The Court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714.

The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout*, 228 F.3d at 714. "When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction. . . ." *Deck v. Miami Jacobs Bus. College Co.*, No. 3:12-cv-63, 2013 U.S. Dist. LEXIS 14845, 26 (S.D. Ohio Jan. 31, 2013) (Black, J.).

## III. DISCUSSION

Defendants have moved this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, or in the alternative, to stay these proceedings pending arbitration. Defendants assert that Plaintiff's claims are subject to the arbitration provision set forth in the Provider Agreement. Plaintiff, however, argues that the claims between Belmont and Defendant Community are subject to the arbitration provision of the Provider Agreement and have even initiated an arbitration proceeding on those claims. But Plaintiff asserts that there is no arbitration agreement between Belmont and Defendant Anthem, and therefore, Defendants' Motion must be denied.

The Court will first consider the application and enforceability of the arbitration provision in the Provider Agreement, and then determine if the arbitration provision applies to Defendant Anthem.

## A.     Enforceability of the Arbitration Provision

There is no dispute between the parties that the Provider Agreement contains a valid and enforceable arbitration provision.  In fact, Plaintiff has already initiated an arbitration proceeding against Defendant Community at the same time it filed this lawsuit.

"Arbitration is simply a matter of contract between parties; it is a way to resolve disputes— but only those disputes—that the parties have agreed to submit to arbitration."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648–649 (1986).

In the case at bar, the arbitration language of the Provider Agreement specifically provides that it is "entered into by and between Community Insurance Company doing business as Anthem Blue Cross and Blue Shield (hereinafter "Anthem") and Belmont Medical Care (hereinafter "Provider")."  The Provider Agreement further provides in relevant part:

> **7.1     Dispute Resolution.**  All disputes between Anthem and Provider arising out of or related in any manner to this Agreement shall be resolved using the dispute resolution and arbitration procedures as set forth below.
>
> *     *     *
>
> **7.2     Arbitration**.  Any dispute within the scope of subsection 7.1.1 that remains unresolved at the conclusion of the applicable process outlined in subsection 7.1.1 shall be resolved by binding arbitration in the manner as set forth below.  Except to the extent as set forth below, the arbitration shall be conducted pursuant to JAMS Comprehensive Arbitration Rules and Procedures.  The parties agree to be bound by the findings of the arbitrator(s) with respect to such dispute, subject to the right of the parties to appeal such findings as set forth herein.

(Doc. 6-1).

Therefore, pursuant to the Provider Agreement, Plaintiff Belmont and Defendant Community agreed to arbitrate all claims at issued in this case.

**B.     Parties to the Arbitration Provision of the Provider Agreement**

Having found that the Provider Agreement contains a valid and enforceable arbitration provision, the Court must now consider whether it applies to all claims and parties to this litigation. Plaintiff argues that the mandatory arbitration provision of the Provider Agreement does not apply to Defendant Anthem as it was not a party to the Agreement. Specifically, Plaintiff asserts that Defendant Anthem hasn't legally existed in the State of Ohio since 2002 and therefore cannot have entered into the Provider Agreement in 2017.

Plaintiff argues that it never agreed to arbitrate any dispute with Anthem as it ceased to exist. Plaintiff states: "[t]o the extent that Defendant Community relied upon Defendant Anthem in dealing with Belmont and denying claims, then the disputes involving Defendant Community also cannot be subject to arbitration as Belmont agreed to arbitrate disputes between it and Defendant Community but not those upon which Defendant Community employed, engaged or in any way relied upon Defendant Anthem." (Doc. 6, Pl.'s Response at 4). In support of this assertion, Plaintiff relies on a line of cases that state that ". . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A&H Mechanical Contractors, Inc.*, 100 Fed.Appx.. 396 (6th Cir. 2004), citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

Plaintiff does not dispute that it signed a Provider Agreement that specifically states that it entered into the Agreement with Community Insurance Company d/b/a/Anthem Blue Cross and Blue Shield. A cursory review of the Ohio business records on file with the Ohio Secretary of State's Office shows the registration of Anthem Blue Cross and Blue Shield with an original trade

name of Community Insurance Company and the addressee on the document is Anthem, Inc. *See*, https://businesssearch.sos.state.oh.us/?=businessDetails/1250519.[1] This suggests that Community Insurance Company, Anthem Blue Cross and Blue Shield, and Anthem, Inc. are one in the same for purposes of fulfilling their obligations to Belmont under the Provider Agreement and with respect to the agreement to arbitrate all disputes between them.

## C.    Non-Signatory

Even if the Court were to determine that Anthem was not a signatory to the Provider Agreement as alleged by Plaintiff, the Court can consider whether Plaintiff's claims against a non-signatory should be stayed or included in the arbitration proceedings. It is established law in the Sixth Circuit that "nonsignatories may be bound to arbitration agreements under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). Non-signatories may be subject to an arbitration agreement between two contracting parties through one of the following five theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Typically, these theories apply where a signatory seeks to compel a non-signatory's participation in arbitration, however, in the case at bar, the situation is opposite; *i.e.*, Plaintiff argues the claims against non-signatory Anthem are not arbitrable, and it is Defendants Community and Anthem collectively that seek to resolve Plaintiff's claims against them through arbitration. As the Second Circuit has noted, "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.

---

[1] This company has been operating in the State of Ohio since 1995 through the present, with a current expiration date of 09/04/2021.

2003) (citing *Thomson-CSF*, 64 F.3d at 779). The Eighth Circuit summarized that "[a] willing nonsignatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues, [b]ut a willing signatory seeking to arbitrate with a *non*-signatory that is unwilling must establish at least one of the five theories described in [*Thomson-CSF*]. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) (citing *Merrill Lynch*, 337 F.3d at 131).

This same approach has been recognized in this District. *See Reilly v. Meffe*, 6 F. Supp. 3d 760, 777 (S.D. Ohio 2014) (Graham, J.) ("Conversely, a signatory can be compelled to arbitrate at the nonsignatory's insistence 'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" (citing *Thomson-CSF*, 64 F.3d at 779)). Similarly, in *Orcutt v. Kettering Radiologists, Inc.*, the Court stopped short of using the term "alternative estoppel," but acknowledged that equitable estoppel allows a non-signatory to compel arbitration under two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate [ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

199 F. Supp. 2d 746, 752 (S.D. Ohio 2002) (Rice, C.J.) (citing *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999))*; see also Rodriguez v. Tropical Smoothie Franchise Development Corp.*, No. 3:11-cv-359, 2012 WL 12770 (S.D. Ohio Jan. 4, 2012) (holding that non-signatory could compel arbitration where the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed); *Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714, 720–21 (Ohio Ct. App. 2016) (where service provider (signatory) sued former customer (signatory) and competitor (nonsignatory), court affirmed motion to compel arbitration and stay proceedings against nonsignatory competitor).

In the case at bar, Plaintiff's claims for fraud and breach of contract are intertwined with the underlying contract obligations established by the Provider Agreement. (*See*, e.g., Doc. 2, Compl. ¶¶ 6–7, 24, 28–29, 33–37). The Provider Agreement clearly applies to all disputes between the parties, specifically Belmont (Provider) and Anthem. Therefore, any claims against Anthem are derived from, and based on the contract obligations set forth in the Provider Agreement between Belmont and Community Insurance Company doing business as Anthem Blue Cross and Blue Shield.

Moreover, Plaintiff's Complaint alleges that both defendants engaged in the same actions for which it seeks relief—alleged denials for opting out of certain drug testing policies, denials of claims, refusal to consider any changes to reimbursement schedules, investigations regarding billing practices, participation in a mediation, and refusal to reimburse for certain medical services. (*Id*. at ¶¶ 16, 18, 22-27, 30). Defendant Anthem is not singled out as to any alleged wrongful action.

Finally, it is in the best interest of judicial economy to have all claims arbitrated together. The Court has already discussed the interconnectedness of the claims against the Defendants. If

the Court were to compel Plaintiff to arbitrate its claims against Community, but not Anthem, it would invite the potential for inconsistent outcomes and would subject the parties to unnecessary costs and delays.

In conclusion, the Court finds that Plaintiff is estopped from bringing suit against Defendant Anthem separately and must be compelled to arbitrate this matter against both Community and Anthem together.

**D.     Fraud Claim**

Defendants argue that Plaintiff's fraud claim must be dismissed because it is not pled with particularity sufficient to state a cognizable cause of action. Additionally, Defendants assert that Plaintiff has filed a demand for arbitration and therefore cannot dispute the validity, applicability or enforceability of the Provider Agreement's arbitration provision. Plaintiff generally alleges in Count One of the Complaint that Defendant Anthem committed fraud and acted in bad faith in failing to reimburse Belmont for its incurred expenses

The Court agrees that any suggestion by Plaintiff that the arbitration provision included in Provider Agreement is somehow unenforceable or void fails. Not only has Plaintiff already initiated an arbitration proceeding, but Plaintiff has failed to allege fraudulent actions in related to entering into the agreement to arbitrate aside from stating that Anthem did not exist in Ohio at the time of entering into the Provider Agreement. Even if Plaintiff raised a valid claim here, the dispute over formation of the contract can be decided in arbitration. S*ee Phelps v. US Metals Grp.*, No. 1:09-cv-1039, 2009 U.S. Dist. LEXIS 125524 (N.D. Ohio Dec. 3, 2009) ("Alleged irregularities in the formation of the contract as a whole are an issue for the arbitrator to decide."); *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (challenge to the enforceability of a contract as a whole based on contract formation argument is an issue for the

arbitrator); *Manuel v. Honda R&D Americas, Inc.*, 175 F. Supp. 2d 987, 990 (S.D. Ohio 2001) (Rice, J.) (allegation of unconscionability, coercion, enforceability of contract as a whole are for the arbitrator).

Accordingly, all of the issues raised by Plaintiff, including the applicability and the enforceability of the arbitration provision, must be resolved through arbitration.

**E.     Dismiss Plaintiff's Complaint or Stay Pending Arbitration**

Upon finding that Plaintiff's claims in this case are subject to the arbitration provision contained in the Provider Agreement, the Court must determine whether Plaintiff's Complaint should be dismissed or the case should be stayed pending arbitration.  The FAA directs the Court to stay an action pending arbitration; however, the Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable.  *See, e.g., Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 U.S. Dist. LEXIS 35453, at *3 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action.").  Based on the applicable caselaw, the Court concludes that dismissal of Plaintiff's Complaint is the appropriate remedy because all of Plaintiffs' claims are arbitrable.  The Court can discern no purpose for retaining jurisdiction and staying the action.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED** and the Motion to Stay is **DENIED AS MOOT**.

The Clerk shall remove Document 3 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**